**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUN 1 8 2009 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____
                                                    )
RED BULL GMBH and RED BULL NORTH          )
AMERICA, INC.,                                     )
                                                    )   CV-09
                  Plaintiffs,                       )
                                                    )   **COMPLAINT FOR DAMAGES AND**
        v.                                          )   **INJUNCTIVE RELIEF**
                                                    )
LAMONT DIST., INC. A/K/A LAMONT            )
DISTRIBUTORS, INC., ISRAEL LIBEROW,        )
AND MOSHE LIBEROW,                            )
                                                    )
                  Defendants.                       )
                                                    )
_____ )

**09      2602**

**DEARIE, J.**

**MANN, M.J.**

## COMPLAINT

Plaintiffs Red Bull GmbH ("Red Bull AU") and Red Bull North America, Inc. ("RBNA")

(Red Bull AU and/or RBNA are collectively and separately referred to hereafter as "Red Bull" or

"Plaintiffs"), allege for their Complaint against Defendants Lamont Dist., Inc. a.k.a. Lamont

Distributors, Inc. ("Lamont Distributors"); Israel Liberow; and Moshe Liberow (collectively,

"Lamont" or "Defendants") the following:

## INTRODUCTION

1.      This is a Complaint for damages and injunctive relief for Defendants' acts of

trademark infringement, unfair competition, and copyright infringement under federal law, and

trademark infringement and unfair competition under New York state law.  Red Bull is the

source of the Red Bull Energy Drink authorized for sale in the United States ("U.S. Red Bull

Energy Drink").  These claims arise from Defendants' unauthorized importation and distribution

of gray market Red Bull energy drink products which are materially different from U.S. Red Bull

Energy Drink.  More specifically, upon information and belief, Lamont opportunistically imports,

distributes and/or sells within the United States, certain Red Bull energy drink products based upon the availability of such product outside of the United States that are intended to be sold in various countries of the world other than the United States (e.g., the United Kingdom) and are materially different than the U.S. Red Bull Energy Drink (collectively Red Bull's energy drink products intended for sale overseas and sold in the U.S. without authorization are called herein "Gray Market Red Bull Energy Drink").

2.      These Gray Market Red Bull Energy Drink products differ from U.S. Red Bull Energy Drink, authorized and intended for sale in the United States in numerous respects. For example, the Gray Market Red Bull Energy Drink products may have, among other things, omitted or different nutritional information, unfamiliar ingredients identified on the cans, unfamiliar spelling or language on the cans (such as wording written in British English), different local distributor contact information (e.g., a London address rather than the U.S. California address), a lack of required U.S. federal and state nutritional, deposit, and volumetric information, and a different overall image than U.S. Red Bull Energy Drink. Further, Red Bull AU, through RBNA, maintains a closely monitored exclusive distribution network for U.S. Red Bull Energy Drink. Gray Market Red Bull Energy Drink is sold and distributed outside of this authorized distribution channel and, thus, is not subject to the same rigorous quality control standards which are employed for U.S. Red Bull products.

3.      Defendants' unauthorized gray market importation and subsequent distribution is actionable because, *inter alia*, such distribution causes or is likely to cause purchaser or consumer confusion, mistake, and/or deception to the detriment of Red Bull, as well as to the detriment of consumers and purchasers in the United States. Purchasers and consumers in the United States have come to expect a certain quality, packaging, appearance, and overall image

\\\NY - 087021/000354 - 1148629 v2

for the U.S. Red Bull Energy Drink products as a result of Red Bull's extensive branding, marketing, sales, and quality control efforts in the United States. When such purchasers and consumers encounter the Gray Market Red Bull Energy Drink products, which bear certain of Red Bull's trademarks and copyrighted subject matter but which are otherwise materially different from what U.S. purchasers and consumers expect, they are likely to be confused and indeed disappointed. Further, such sales of Gray Market Red Bull Energy Drinks cause great damage to Red Bull AU and to its American subsidiary RBNA, and greatly damage the goodwill in Red Bull's valuable trademarks.

4.      Based on these and other unlawful actions by Lamont, Red Bull asserts the following specific claims: First Cause of Action – federal trademark infringement under 15 U.S.C. § 1114(1); Second Cause of Action – federal unfair competition under 15 U.S.C. § 1125(a)(1)(A); Third Cause of Action –federal copyright infringement under 17 U.S.C. §§ 501, 602; Fourth Cause of Action – New York common law trademark infringement; and Fifth Cause of Action – New York common law unfair competition.

## JURISDICTION

5.      The First and Second Causes of Action arise under the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.* This Court has jurisdiction over these claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

6.      The Third Cause of Action arises under the copyright laws of the United States. This Court has jurisdiction over the subject matter of this claim pursuant to 17 U.S.C. §§ 501 and 602, 28 U.S.C. §§ 1331 and 1338(a).

7.      The Fourth through Fifth Causes of Action arise under New York statutory and common law. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1338(b), in

that these claims are joined with substantial and related claims brought under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.* This Court also has jurisdiction over the state law claims under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state law claims.

## VENUE

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because the acts complained of occurred and are occurring in the United States and in this District, and have caused damage to Red Bull in the United States and in this District.

## PARTIES

9.      Plaintiff Red Bull AU is a company organized and existing under the laws of Austria with an address of Am Brunnen 1, Fuschl am See, 5330 Austria. Red Bull AU offers various goods and services to the consuming public at large, including most notably the Red Bull Energy Drink, in many countries throughout the world, including the United States.

10.     Plaintiff Red Bull AU offers its goods and services in the United States, including the U.S. Red Bull Energy Drink, through its wholly-owned subsidiary RBNA, a corporation organized under the laws of California, with an address of 1740 Stewart Street, Santa Monica, California 90404. RBNA offers its goods and services in New York and in this District through its authorized distributors only.

11.     On information and belief, Defendant Lamont Distributors is a corporation organized and existing under the laws of New York, with its registered address located in this District, at 5 Lamont Court Suite 3A, Brooklyn, NY 11225.

12.     On information and belief, Defendant Israel Liberow is an executive of Lamont Distributors, and directly controls the actions and operations of Defendant Lamont Distributors complained of herein.

13.     On information and belief, Defendant Moshe Liberow is affiliated with Lamont Distributors, and directly controls the actions and operations of Defendant Lamont Distributors complained of herein.

14.     Red Bull is informed and believes, and on that basis alleges, that each Defendant conducts business in interstate commerce in the United States, in New York and in this District; the claims alleged herein arise from each Defendant's acts or omissions in the United States, in New York and in this District; each Defendant has purposefully directed its activities to residents in the United States, in New York and in this District; and each Defendant's acts or omissions have damaged Red Bull's property in the United States, in New York and in this District.

## FACTS

### The Red Bull Energy Drink

15.     The success of the Red Bull Energy Drink is in large part due to the extensive branding efforts undertaken by Red Bull in support of the Red Bull Energy Drink, including the development of unique and distinctive product packaging as well as the expenditure of billions of dollars on advertising and promotional activities.

16.     Red Bull Energy Drink has achieved unparalleled success since its introduction in Austria in 1987, and has gained wide-spread recognition throughout the United States among purchasers and consumers, as well as the beverage industry, since its introduction into the U.S. market in 1996.  Photographs of the U.S. Red Bull Energy Drink are provided at Exhibit A.

17.     The Red Bull Energy Drink, Red Bull's preeminent and immensely popular product, is currently the leader in the energy drink category and is sold in approximately 152 countries.  The Red Bull Energy Drink is widely distributed through numerous outlets in the United States (including in this State and District), and is found in many beverage coolers and store aisles where beverages are sold, including, among other places, convenience stores, grocery stores, supermarkets, restaurants, gas stations, sports clubs, and entertainment venues.

18.     Red Bull and the Red Bull Energy Drink are credited with fueling the energy drink craze that has attracted all types of consumers and purchasers, from athletes and students to office workers and truck drivers.  In fact, the Red Bull Energy Drink's consumer appeal has resulted in an explosive growth in the energy drink category in the United States as beverage manufacturers and distributors have been anxious to attempt to duplicate the success of the Red Bull Energy Drink.  As such, energy drinks constitute a growing and valuable product category in the beverage industry in the United States.

19.     Indeed, the sales volume of the Red Bull Energy Drink has exploded in recent years, making the brand the unchallenged market leader for energy drinks.  In 2008, over 1.3 billion units of the Red Bull Energy Drink were sold in the United States (representing a three-fold increase in sales volume since 2003, when Red Bull sold 449.6 million units in the United States).

**U.S. Red Bull Energy Drink**

20.     Even with the constant entry of numerous competitive products into the energy drink field, Red Bull continues to be recognized as a leader in the energy drink category due to the remarkable success of the Red Bull Energy Drink.  This success has been attained, in

significant part, as a result of Red Bull's innovative U.S. marketing strategy and creation of a unique brand image associated with the Red Bull Energy Drink.

21.    In particular, Red Bull has combined such innovative marketing strategies and brand image with an attention to local consumer demands and customer preferences in each country in which the product is distributed.  Integral to the brand image of the Red Bull Energy Drink is Red Bull's ability to ensure that it offers a tailored product, in terms of product ingredients, quality control, packaging, image, marketing, promotion, and advertising, for each specific country and/or region in which the Red Bull Energy Drink is offered.

22.    Specifically, Red Bull individually assesses the consumers and purchasers, customs, preferences, trends, and regulations of specific countries and regions, and tailors the version of the Red Bull Energy Drink sold in each country or region to reflect those needs and preferences on a country-by-country basis.  For example, depending upon the country in which the product is sold, the Red Bull Energy Drink may feature, among other things, different ingredients, different languages, volumetric information, marketing phrases, and nutritional data.

23.    By the time the Red Bull Energy Drink was first introduced into the United States in 1996, the Red Bull Energy Drink had already become a success throughout Europe. Nevertheless, prior to the launch of the Red Bull Energy Drink in the United States, Red Bull invested significant resources into assessing the U.S. market, including researching potential purchaser and consumer perceptions, regulatory issues, and advertising and marketing concerns, all in an effort to ensure the Red Bull Energy Drink's success in the United States.  As a result of such efforts, and as set forth below, various modifications were made to U.S. Red Bull Energy Drink.  Thus, the U.S. Red Bull Energy Drink is unique to the U.S. market and, consequently, is materially different from Gray Market Red Bull Energy Drink products sold outside the U.S.

- 7 -

24. As is the case with each country in which the Red Bull Energy Drink is distributed, the U.S. Red Bull Energy Drink has been formulated, packaged, distributed, and promoted to meet the consumer demands, customer preferences, and regulations of the United States.

25. First and most obviously, the wording on the U.S. Red Bull Energy Drink cans is written in American English, with a notation that the product is distributed by Red Bull's American affiliate RBNA (with its California address and "877" toll free number listed), thus clearly indicating to American consumers and purchasers that the product is intended to be sold in the United States. (The toll-free number is an important means through which American consumers can direct questions, inquiries, and requests to RBNA). The U.S. Red Bull Energy Drink furthermore contains the well-known and familiar "Nutrition Facts" box required by the U.S. Food & Drug Administration ("FDA") which includes American-type nutritional information and units of measurement in the American "standard" system (e.g., ounces) which American consumers and purchasers have come to associate with products sold in the United States.

26. Red Bull also makes extensive quality control efforts in the United States with respect to the U.S. Red Bull Energy Drink. Indeed, while Red Bull has stringent quality control standards for all of its products sold around the world and distributed through Red Bull's authorized channels, Red Bull has designed certain quality control measures specific to the U.S. Red Bull Energy Drink to which importers and distributors of Gray Market Red Bull Energy Drink products do not adhere. Such efforts demonstrate Red Bull's commitment to ensuring that its American consumers and purchasers receive the highest-quality U.S. Red Bull Energy Drink products. Such quality control measures are discussed in further detail below and include 1)

- 8 -

batch coding and tracking; 2) rigorous importation standards; 3) quality control at U.S.

distribution stage; and 4) quality control at retail level.

27.     **Batch Coding and Tracking**.  Each can of U.S. Red Bull Energy Drink has a

batch code and expiration date that are displayed on the bottom of the U.S. Red Bull Energy

Drink can.  If it were necessary to locate or recall product in the United States (e.g., if a

particular batch were damaged or adulterated), Red Bull and RBNA would rely upon these batch

codes and their own internal sales and distribution information to pinpoint where the affected

products were distributed, thus making a more targeted, efficient, and effective pulling, rotating

or recall of product possible.

28.     **Rigorous Importation Standards**.  U.S. Red Bull Energy Drink is shipped into

the United States on containers which are packed and filled to ensure the stringent quality control

standards of Red Bull and to avoid damage to the U.S. Red Bull Energy Drink.  Further,

depending upon the port of entry and weather conditions at the time of importation, Red Bull

will, as appropriate, ship the U.S. Red Bull Energy Drink in climate-controlled containers to

maintain the integrity of the product.

29.     **Quality Control at U.S. Distribution Stage**.  Red Bull AU only ships U.S. Red

Bull Energy Drink to its U.S.-authorized distributor, RBNA.  Indeed, RBNA maintains the U.S.

Red Bull Energy Drink in controlled warehouses maintaining a first-in, first out policy, and

inspects those warehouses for quality control.  Such controls include, but are not limited to,

restrictions regarding stacking, hourly monitoring of temperature and humidity in all facilities,

adherence to acceptable facility temperature ranges, cleanliness, and awareness of shelf-life for

the products.  Additionally, should any product be damaged, compromised, or expired, that

\\\NY - 087021/000354 - 1148629 v2

Bull is able to better control how its products are marketed and sold to its American customers.

RBNA then selects its authorized U.S. sub-distributors who agree to comply with Red Bull's rigorous quality control standards. RBNA maintains a network of authorized distributors to ensure the continued adherence to Red Bull's quality standards.

31.     **Quality Control at Retail Level.** RBNA's field personnel and authorized distributors frequently check U.S. retail locations where they know the U.S. Red Bull Energy product is sold and examine the product, including the expiration date, to ensure proper quality control and rotation of products. Similarly, distributors will return expired U.S. Red Bull Energy Drink product to RBNA for destruction or destroy the product themselves if they provide RBNA with a certificate of destruction from a reputable disposal company.

32.     Given the tremendous goodwill associated with the Red Bull Marks (as described above), the unparalleled success of the U.S. Red Bull Energy Drink, and the accompanying popularity and public attention directed to the product, any instances where the product may fail to meet the stringent quality standards and product image that the consuming public has come to expect could significantly harm Red Bull, including the reputation and goodwill it has nurtured and grown in the United States.

**Red Bull's Marks**

33.     Central to Red Bull's success in the United States has been a unique brand image, accomplished through the adoption of distinctive and eye-catching trademarks and trade dress for

- 10 -

the U.S. Red Bull Energy Drink products, which are prominently featured in Red Bull's marketing, advertising, and promotional activities.

34.    The U.S. Red Bull Energy Drink cans sold in the United States, like versions of the Red Bull Energy Drink packaging intended for sale in many other countries, feature a number of Red Bull's valuable trademarks. Specifically, the U.S. Red Bull Energy Drink products features the RED BULL word mark ("RED BULL Word Mark") along with a distinctive design comprised of a pair of horned, red-colored bulls charging one another set against a gold sun ("Double Bull Design") and a distinctive design that is comprised of alternating sections of blue and silver colors ("Red Bull Background Design"); these elements, among others, combine to form the distinctive front-panel composite design on the front of the Red Bull Energy Drink ("Front Panel Composite Design"). See Exhibit A. The front of the U.S. Red Bull Energy Drink can also features the slogan mark VITALIZES BODY AND MIND ("Red Bull Slogan Mark"). Collectively, the RED BULL Word Mark, the Double Bull Design, the Red Bull Background Design, the Front Panel Composite Design, the Red Bull Slogan Mark (along with the registrations thereto as expressed below), along with Red Bull's other marks, are referred to as the "Red Bull Marks."

35.    Red Bull has sought to protect its valuable rights in the Red Bull Marks through various means, including the filing of federal trademark applications to register such trademarks. Such registrations include, U.S. Registration Number 3,092,197 for the RED BULL word mark, U.S. Reg. No. 2,946,045 for the Double Bull Design, and U.S. Reg. No. 3,479,607 for the Front Panel Composite Design, all used in connection with energy drinks, among other things (the registered marks listed above are collectively referred to as the "Red Bull Registered Marks").

\\\NY - 087021/000354 - 1148629 v2

Attached as Exhibit B are copies of the federal registrations for each of the respective Red Bull Registered Marks.

36.     In addition to prominently displaying the Red Bull Marks on the U.S. Red Bull Energy Drink cans, Red Bull has made the Red Bull Marks central to its marketing strategy, displaying the Red Bull Marks on promotional materials, in advertisements, and at sporting and other events hosted or sponsored by Red Bull to promote the Red Bull Energy Drink.

37.     Since 1996, Red Bull has expended over two billion dollars on advertising, marketing, and promoting the U.S. Red Bull Energy Drink products and the Red Bull Marks in the United States.  In 2008 alone in the United States, Red Bull spent an estimated $400 million on marketing, advertising, and promotional expenses.

38.     Red Bull advertises the U.S. Red Bull Energy Drinks featuring the Red Bull Marks in the United States through various means, including electronic media (namely television, movies, radio, and the Internet), print media (including newspapers, periodicals, and flyers), and other promotional materials (including in-store displays such as specially-manufactured Red Bull Energy Drink coolers).

39.     Additionally, Red Bull promotes the U.S. Red Bull Energy Drinks featuring the Red Bull Marks in connection with numerous athletic events, music festivals, sponsorships, and sports competitions in the United States and around the world.  For instance, Red Bull has sponsored motocross events such as the Red Bull X-Fighters (most recently in Texas, 2008); air sports events such as the Red Bull Flugtag (Chicago, 2008) and the Red Bull Air Race (San Diego, 2008); Indy motorcycle  races such as the Red Bull Indianapolis Grand Prix (Indiana, 2008) and extreme sports events such as the Red Bull New Year No Limits (Las Vegas, 2009). Hundreds of thousands of spectators have witnessed these events in the United States, further

\\\NY - 087021/000354 - 1148629 v2

strengthening Red Bull's brand recognition and building up the goodwill in the Red Bull Marks. Red Bull has additionally sponsored or supported numerous other sporting events in the United States since 2003.

40.     Likewise, Red Bull promotes the U.S. Red Bull Energy Drink featuring the Red Bull Marks by sponsoring teams and athletes competing in national and international competitive sports. Red Bull is heavily involved in NASCAR, as the owner and sponsor of the Red Bull Racing Team which competes in various races throughout the United States. Red Bull has also sponsored and co-owned Formula One racing cars and a Formula One team that has competed in events in the United States, and has sponsored and/or sponsors the motorcycle race teams Red Bull Yamaha WCM and Honda Red Bull Racing that compete in the United States. Red Bull additionally owns a Major League Soccer franchise, Red Bull New York. In addition to teams, Red Bull has sponsored numerous individual American athletes in extreme and other sports such as wakeboarding, skateboarding, snowboarding, B.A.S.E. jumping, BMX Street, as well as athletes that compete in various other sports.

41.     Red Bull also uses the Red Bull Marks in connection with various cultural and community-based activities and events including music and deejay events such as the Red Bull Music Academy, as well as artistic shows such as the Red Bull Art of the Can.

42.     In addition, Red Bull uses the Red Bull Marks (and extensively licenses their use to third parties) in connection with numerous promotional and other items related to the U.S. Red Bull Energy Drinks, such as on-premises signs, mirrors, aprons, notepads, and coolers; tents, umbrellas, and other outdoor promotional items; cars used for distributing samples of the U.S. Red Bull Energy Drinks; clothing, including T-shirts and hats; and sports gear and decorations,

- 13 -

including helmets, trophy stands, ramps, wind-surfing equipment, course flags, and finish lines, used in connection with the various athletic competitions sponsored by Red Bull.

43.     Purchasers and consumers in the United States have come to recognize the Red Bull Marks and to associate such proprietary indicia exclusively with Red Bull and the U.S. Red Bull Energy Drinks with which they are familiar.  Red Bull has acquired a valuable reputation and goodwill among the U.S. public as a result of such consumer association.  In fact, such advertising, marketing, and promotional efforts, as well as the significant sales of the Red Bull Energy Drink, have made Red Bull famous, and indeed a household name, in the United States.

44.     Red Bull has not licensed or otherwise consented to, use of the Red Bull Marks or any confusingly similar trademarks by Defendants.

**Red Bull's Copyright**

45.     In addition to the trademark rights associated with the Red Bull Energy Drink, as outlined above, Red Bull also controls the copyright associated with the front label of the Red Bull Energy Drink ("Red Bull Front Label Work").

46.     Red Bull is the exclusive licensee of the U.S. copyright in the Red Bull Front Label Work (excepting the Double Bull Design), including Copyright Reg. No. VA0001410959 (see copy of registration attached as Exhibit C)  ("Red Bull Copyright"), which is comprised of the arrangement of elements in a 2-dimensional artwork.

47.     Red Bull has never authorized Defendants to import or sell Gray Market Red Bull Energy Drink bearing the Red Bull Copyright in the United States.

**Defendants' Wrongful Conduct**

48.     On information and belief, Defendants import, distribute, and/or sell, materially different Gray Market Red Bull Energy Drink product intended for sale in foreign countries such

- 14 -

as the United Kingdom, and such actions are undertaken by Defendants in the United States and

in this District.  On information and belief, such materially different Gray Market Red Bull

Energy Drink product, which was manufactured and sold outside of the United States and then

imported by the Defendants from outside of the United States, bears the Red Bull Marks as well

as substantially similar versions of the Red Bull Copyright.  See Exhibit D for a photograph of

the Gray Market Red Bull Energy Drink product believed to be imported, distributed, and/or sold

in the United States by Defendants.

   49.     The importation, distribution, and/or sale of Gray Market Red Bull Energy Drink

by Defendants is likely to cause confusion among consumers as to the source, nature, and/or

approval for sale of these products, because the Gray Market Red Bull Energy Drink offered by

the Defendants in the United States is materially different from the authorized U.S. Red Bull

Energy Drink, and yet bear many of the same trademarks as the U.S. Red Bull Energy Drink.

   50.     On information and belief, Defendants have imported, and/or authorized the

importation of, shipping "containers" (consisting of well over 2,000 cases each) of Gray Market

Red Bull Energy Drink product into the United States and then distributed and/or sold such gray

market products inside the United States.  Further, on information and belief, Defendant Moshe

Liberow has, on behalf of Defendants, directly solicited RBNA's customers to purchase these

Gray Market Red Bull Energy Drink products.

   51.     As seen in Exhibit D, the Gray Market Red Bull Energy Drink product imported

and distributed by Defendants (intended to be sold in the United Kingdom) is materially different

from the U.S. Red Bull Energy Drink product in a number of ways, including the following:  (1)

the U.K. can identifies a London entity (with a U.K. address) as the distributor, rather than

RBNA with a Santa Monica, California address and the U.S. "877" toll-free number and the U.S.

- 15 -

website <www.redbullusa.com>; (2) the U.K. can is written in British English and thus contains unfamiliar metric information and unfamiliar spellings to American consumers (e.g., *flavourings*; *colours*; *fibre*); (3) the U.K. can provides nutritional information per 100ml rather than per serving (250ml) as shown on the U.S. can; (4) the U.K. can lacks the well-known "Nutrition Facts Box" and other ingredient information required by FDA regulations, and rather contains different nutritional information depicted in an unfamiliar format (intended for British consumers); (5) the U.K. can lacks important volumetric information on the front label of the can "(8.3 FL OZ / 250 mL)" required by FDA regulations; (6) the U.K. can carries the warning, "Energy Drink – high caffeine content (32 mg / 100 ml)" not present on the U.S. Red Bull Energy Drink can; (7) the U.K. product lists certain unfamiliar ingredients not present on the U.S. Red Bull Energy Drink product such as "carbon dioxide"; and (8) the U.K. product lacks the deposit information required by New York State and which is present on U.S. Red Bull Energy Drink cans legitimately sold in the State.

52.     Further, the Gray Market Red Bull Energy Drink sold by Defendants lack several key pieces of information that are used by Red Bull in connection with its U.S. quality control efforts. For example, the Gray Market Red Bull Energy Drink cans sold by Defendants are missing the U.S. toll-free "877" number and feature incorrect website address information for consumers to contact RBNA. Such toll-free number is provided on the U.S. Red Bull Energy Drink in order to allow consumers to contact RBNA with any inquiries or concerns regarding the Red Bull Energy Drink, and serves as an important means for RBNA to gather information about potential problems or issues relating to the U.S. Red Bull Energy Drink.

53.     Further, upon information and belief, Defendants' importation and distribution methods for the unauthorized Gray Market Red Bull Energy Drink do not comply with various

of Red Bull's quality-control standards as outlined above. For example, the Defendant's shipping standards, temperature controls and removal of expired product are outside of Red Bull's control. Thus, a consumer may encounter expired Gray Market Red Bull Energy Drink and wrongfully attribute the sale of expired product to Red Bull.

54.     Overall, these material differences create an impression among U.S. consumers of a shoddy, strange, low quality, or different product from the product they expect to encounter in the United States, and are thus directly at odds with Red Bull's attempt to position the U.S. Red Bull Energy Drink as a premium, high-quality product. Accordingly, as consumers are likely to associate Defendants' Gray Market Red Bull Energy Drink with the authorized U.S. Red Bull Energy Drink, such material differences are likely to create a negative impression of the U.S. Red Bull Energy Drink among U.S. consumers and tarnish or otherwise harm Red Bull's reputation and goodwill.

55.     The failure of the Gray Market Red Bull Energy Drink cans imported and sold by Defendants to comply with federal and state labeling laws and regulations also threatens Red Bull's reputation and will cause confusion amongst consumers.

56.     The distribution and sale by Defendants of such materially different Gray Market Red Bull Energy Drink is likely to undermine Red Bull's reputation for producing high-quality products, as purchasers or consumers are likely to be confused by the presence of the Red Bull Marks on such product, and may therefore associate any deficiencies in the Gray Market Red Bull Energy Drink with Red Bull and the U.S. Red Bull Energy Drink.

57.     On information and belief, Defendants were well aware of the fame and strong goodwill associated with the Red Bull Marks and Red Bull's exclusive rights in the Red Bull Marks when they began to import, distribute, and/or sell Gray Market Red Bull Energy Drink

- 17 -

Registered Marks, have standing to maintain an action for trademark infringement under the Federal Trademark Statute, Lanham Act § 32(1) (15 U.S.C. § 1114(1)).

63.     On information and belief, Defendants, without authorization, have imported into the United States, and distributed and sold in the United States, Gray Market Red Bull Energy Drink products featuring the Red Bull Registered Marks, which products are materially different from the U.S. Red Bull Energy Drink authorized by Red Bull for sale in the United States, and that such is likely to cause confusion, or to cause mistake or to deceive.

64.     Red Bull is informed and believes, and on that basis alleges, that Defendants' acts have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the Red Bull Registered Marks, and of the infringing nature of the marks when used in connection with the Gray Market Red Bull Energy Drink, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

65.     As a result of Defendants' trademark infringement, Red Bull has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Red Bull Registered Marks, as well as the goodwill associated therewith, for which it has no adequate remedy at law.

66.     If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of infringement.

67.     As the acts alleged herein constitute infringement of the Red Bull Registered Marks under 15 U.S.C. § 1114 (1), and as Red Bull has no adequate remedy at law, Red Bull is entitled to injunctive relief as well as to Defendants' profits and other remedies provided by 15

\\\NY - 087021/000354 - 1148629 v2

U.S.C. §§ 1116, 1117, and 1118, and to reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(b).

## Second Cause of Action
### Unfair Competition
### *15 U.S.C. § 1125(a)(1)(A)*

68.    Plaintiffs incorporate paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.    Red Bull is informed and believes, and on that basis alleges, that Defendants have, without authorization, imported into the United States and distributed and/or sold in the United States, Gray Market Red Bull Energy Drink products featuring the Red Bull Marks, which products are materially different from the U.S. Red Bull Energy Drink authorized by Red Bull for sale in the United States and that such is likely cause confusion, or to cause mistake and/or to deceive as to the affiliation, connection or association of Defendants with Red Bull, and/or as to the origin, sponsorship or approval by Red Bull of Defendants' Gray Market Red Bull Energy Drink or the commercial activities related to Defendants' Gray Market Red Bull Energy Drink.

70.    Red Bull is informed and believes, and on that basis alleges, that Defendants' acts have been committed with knowledge of Red Bull's exclusive common law rights and goodwill in the Red Bull Marks, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

71.    Red Bull has suffered and, if Defendants are not enjoined from their wrongful acts of passing off and acts of making false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact as described herein, will continue to suffer great and irreparable injury, loss, and damage to its rights in and to the Red Bull Marks and the goodwill associated therewith for which it has no adequate remedy at law.

\\\NY - 087021/000354 - 1148629 v2

72.     If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their wrongful acts.

73.     As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and as Red Bull has no adequate remedy at law, Red Bull is entitled to injunctive relief as well as to Defendants' profits and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and to reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(b).

**Third Cause of Action**
**Copyright Infringement**
*17 U.S.C. §§ 501, 602*

74.     Plaintiffs incorporate paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     Red Bull AU is the exclusive licensee of the Red Bull Copyright – i.e. the Front Label Work in the United States which is the subject of U.S. Copyright Reg. No. VA0001410959 – and thus has standing to bring this claim.

76.     Defendants' unauthorized importation into the United States and distribution in the United States of Gray Market Red Bull Energy Drink which has been manufactured outside of the United Sates constitutes the first distribution in the United States of copies which are substantially similar to the Red Bull Copyright and therefore constitutes infringement of the exclusive right to import and distribute copies under 17 U.S.C. §§ 106 and 602.

77.     As the acts alleged herein constitute copyright infringement of the Red Bull Copyright under 17 U.S.C. §§ 501 and 602, and because Red Bull has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in the Red Bull Copyright due to these acts, Red Bull therefore seeks the relief outlined in this action.

\\\NY - 087021/000354 - 1148629 v2

**Fourth Cause of Action**
**Trademark Infringement**
*New York Common Law*

78.     Plaintiffs incorporate paragraphs 1 through 77 of the Complaint as if fully set forth herein.

79.     Red Bull is informed and believes, and on that basis alleges, that Defendants have, without authorization, imported into the United States and distributed and/or sold in the United States, Gray Market Red Bull Energy Drink products featuring the Red Bull Marks, which products are materially different from the U.S. Red Bull Energy Drink authorized by Red Bull for sale in the United States and that such is likely cause confusion, or to cause mistake and/or to deceive as to the affiliation, connection or association of Defendants with Red Bull, and/or as to the origin, sponsorship or approval by Red Bull of Defendants' Gray Market Red Bull Energy Drink or the commercial activities related to Defendants' Gray Market Red Bull Energy Drink.

80.     Defendants' unlawful use of trademarks which are confusingly similar to the Red Bull Marks constitutes trademark infringement in violation of New York common law.

81.     As a direct and proximate result of Defendants' acts of trademark infringement, Red Bull has been and continues to be injured in its business and property, and has sustained and will continue to sustain substantial damage to its business, goodwill and reputation, in an amount not presently known.

82.     Red Bull has no adequate remedy at law against this infringement of its trademark rights in the Red Bull Marks as alleged herein. Unless Defendants are preliminarily and permanently enjoined from their unlawful use of the Red Bull Marks as set forth above, including use of trademarks which are confusingly similar to the Red Bull Marks, Red Bull will suffer irreparable harm.

- 22 -

### Fifth Cause of Action
### Unfair Competition
### *New York Common Law*

83.     Red Bull incorporates paragraphs 1 through 82 of the Complaint as if fully set forth herein.

84.     On information and belief, Defendants' importation, distribution, and sale of Gray Market Red Bull Energy Drink products which are materially different than U.S. Red Bull Energy Drink products and unauthorized use of the Red Bull Marks is likely to cause confusion and to deceive the public.  Red Bull further alleges on information and belief that Defendants' actions constitute a misappropriation of the enormous goodwill Red Bull has created and developed in the Red Bull Marks.  Red Bull is thus informed and believes, and on that basis alleges, that Defendants' actions constitute unfair competition under New York common law.

85.     As a direct and proximate result of Defendants' actions, Red Bull has suffered and will continue to suffer injury to its business, goodwill and property in an amount not presently known.

86.     Unless Defendants are enjoined from committing these unlawful acts as set forth above, Red Bull will continue to suffer irreparable harm for which it has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment as follows:

(a)     That Defendants infringed the Red Bull Registered Marks and engaged in acts of unfair competition through use of the Red Bull Marks;

(b)     That Gray Market Red Bull Energy Drink is materially different from U.S. Red Bull Energy Drink;

- 23 -

(c) That Defendants' trademark infringement, and acts of unfair competition were knowing and willful and committed with bad faith and intent to deceive;

(d) That this case is exceptional under 15 U.S.C. § 1117(a);

(e) That Defendants infringed the Red Bull Copyright by importing into the United States and distributing the Gray Market Red Bull Energy Drink featuring substantially similar versions of the Red Bull Copyright;

(f) That Defendants' acts of copyright infringement were knowing and willful;

(g) That Defendants, their assignees, transferees, employees, agents and representatives, and all other persons, firms or entities acting in concert or participating with them, be preliminarily and permanently enjoined from:

    (i) importing into the United States, and selling or distributing in the United States, any Gray Market Red Bull Energy Drink product (including but not limited to U.K. Gray Market Red Bull Energy Drink);

    (ii) passing off the Gray Market Red Bull Energy Drink as the U.S. Red Bull Energy Drink;

    (iii) representing that the Gray Market Red Bull Energy Drink has the sponsorship or approval of Red Bull for sale in the United States;

    (iv) representing that the Gray Market Red Bull Energy Drink is original or new when it is deteriorated, altered or damaged;

    (v) representing that the Gray Market Red Bull Energy Drink as imported by Defendants is of the standard, quality or grade of the U.S. Red Bull Energy Drink;

(vi) using, displaying, advertising, promoting, registering, transferring or assigning any marks which are confusingly similar to one or more of the Red Bull Marks, including on or in connection with any products, services or web sites;

(vii) doing or allowing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, the trade or prospective purchasers of Red Bull's products as to the source of Defendants' goods and services, or likely to deceive members of the public, the trade or prospective purchasers of Defendants' goods and services into believing that there is some association, connection or affiliation with, and/or sponsorship or approval by, Red Bull;

(viii) doing or allowing any act or thing in commercial advertising or promotion that misrepresents the nature, characteristics, qualities or geographic origin of Defendants' goods or commercial activities;

(ix) engaging in acts of federal, state or common law trademark infringement or unfair competition that would damage or injure Red Bull and/or the Red Bull Marks; and

(x) importing or distributing materials containing substantially similar copies of the Red Bull Copyright, or derivative works of the Red Bull Copyright;

(h)   That Defendants, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118, be ordered to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisements, and other materials in the possession of Defendants bearing copies of the Red Bull Copyright and/or any marks which are confusingly similar to one or more of the Red Bull Marks or any colorable imitation thereof, including the Gray

- 25 -

Market Red Bull Energy Drink and any other gray market product that is materially different from the U.S. Red Bull Energy Drink, including, without limitation, all plates, molds, matrices, and other means of making these items;

(i) That Defendants, pursuant to 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Red Bull within thirty (30) days after service of the injunction a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunction;

(j) That an accounting be ordered of all of the profits realized by Defendants, or others acting in concert or participation with them, from Defendants' unauthorized importation and distribution of materials featuring the Red Bull Copyright and/or use of marks which are confusingly similar to the Red Bull Marks and/or from Defendants' acts of unfair competition.

2. As to all claims, that Red Bull be awarded all damages in an amount to be ascertained pursuant to applicable laws, including, without limitation, 15 U.S.C. § 1117(a);

3 As to the first claim, that Red Bull be awarded treble damages, prejudgment interest and a reasonable attorney's fee pursuant to 15 U.S.C. § 1117(b);

4. As to the first and second claims, that Red Bull be awarded injunctive relief, pursuant to 15 U.S.C. § 1116;

5. As to the first and second claims, that Red Bull be awarded Defendants' profits and a reasonable attorney's fee, pursuant to 15 U.S.C. § 1117(a);

6. As to the third claim, that Red Bull be awarded injunctive relief,  Defendants' profits, statutory damages, and attorney's fees, pursuant to 17 U.S.C. §§ 502, 503, 504 and 505;

\\\NY - 087021/000354 - 1148629 v2

7.   As to the fifth and sixth claims, that Red Bull be awarded injunctive relief pursuant to New York common law;

8.   As to all claims, that Red Bull recover the costs of this suit; and

9.   That Red Bull be granted such other and further relief as requested herein and as the Court otherwise deems just and proper.

Dated:  June 18, 2009

Respectfully submitted,

HOGAN & HARTSON LLP

By:
Eric J. Lobenfeld
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
EJLOBENFELD@HHLAW.COM

Raymond A. Kurz
Anna Kurian Shaw
Walter B. Stillwell
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Plaintiffs*
*Red Bull GmbH and Red Bull North America*

- 27 -

# EXHIBIT
# <u>A</u>

# U.S. Red Bull Product









# EXHIBIT
# B



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

February 12, 2009

THE ATTACHED U.S. TRADEMARK REGISTRATION *3,092,197* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *May 16, 2006*

SAID RECORDS SHOW TITLE TO BE IN:
*Registrant*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office



M. TARVER
Certifying Officer

Int. Cls.: 32 and 33

Prior U.S. Cls.: 45, 46, 47, 48 and 49

Reg. No. 3,092,197

**United States Patent and Trademark Office**  Registered May 16, 2006

## TRADEMARK
### PRINCIPAL REGISTER

# RED BULL

RED BULL GMBH (AUSTRIA LTD LIAB CO)
AM BRUNNEN 1
FUSCHL AM SEE, AUSTRIA 5330

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY
ENERGY DRINKS AND HYPERTONIC DRINKS, IN
CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 1-31-1987; IN COMMERCE 5-31-1996.

FOR: ALCOHOLIC BEVERAGES, NAMELY VOD-
KA, IN CLASS 33 (U.S. CLS. 47 AND 49).

FIRST USE 7-23-2002; IN COMMERCE 8-15-2002.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,541,794, 2,852,235
AND OTHERS.

SER. NO. 78-347,152, FILED 12-31-2003.

CAROLINE WOOD, EXAMINING ATTORNEY



7169857

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

February 11, 2009

THE ATTACHED U.S. TRADEMARK REGISTRATION 2,946,045 IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM   *May 03, 2005*

*AMENDMENT/CORRECTION/NEW CERT(SEC7) ISSUED*
SAID RECORDS SHOW TITLE TO BE IN:
   *Registrant*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

E. BORNETT

Certifying Officer

Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

**United States Patent and Trademark Office**

Amended

Reg. No. 2,946,045

Registered May 3, 2005

OG Date Dec. 27, 2005

## TRADEMARK
## PRINCIPAL REGISTER



RED BULL GMBH (AUSTRIA LTD LIAB
CO)
AM BRUNNEN 1
FUSCHL AM SEE, AUSTRIA 5330
OWNER OF U.S. REG. NO. 2,594,767.
THE MARK CONSISTS OF TWO OP-
POSING OR CHARGING BULLS, WITH
A CIRCULAR, GLOBE OR SUN BACK-
GROUND.

FOR: NON-ALCOHOLIC BEVERAGES,
NAMELY ENERGY DRINKS AND HY-
PERTONIC DRINKS, IN CLASS 32 (U.S.
CLS. 45, 46 AND 48).

FIRST USE 1-31-1987; IN COMMERCE
5-31-1996.

SER. NO. 78-347,148, FILED 12-31-2003.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Dec. 27, 2005.*

DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE

**Int. Cl.: 32**

**Prior U.S. Cls.: 45, 46 and 48**

**Reg. No. 2,946,045**

## United States Patent and Trademark Office

Registered May 3, 2005

### TRADEMARK
### PRINCIPAL REGISTER



RED BULL GMBH (AUSTRIA LTD LIAB CO)
AM BRUNNEN 1
FUSCHL AM SEE, AUSTRIA 5330

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY ENERGY DRINKS AND HYPERTONIC DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 1-31-1987; IN COMMERCE 1-31-1996.

OWNER OF U.S. REG. NO. 2,594,767.

THE MARK CONSISTS OF TWO OPPOSING OR CHARGING BULLS, WITH A CIRCULAR, GLOBE OR SUN BACKGROUND.

SER. NO. 78-347,148, FILED 12-31-2003.

CAROLINE WOOD, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE
#### United States Patent and Trademark Office

**March 25, 2009**

THE ATTACHED U.S. TRADEMARK REGISTRATION *3,479,607* IS CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION ISSUED BY THE UNITED STATES PATENT AND TRADEMARK OFFICE WHICH REGISTRATION IS IN FULL FORCE AND EFFECT.

REGISTERED FOR A TERM OF *10* YEARS FROM  *August 05, 2008*
SAID RECORDS SHOW TITLE TO BE IN:  *Registrant*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office



M. K. CARTER

Certifying Officer

Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

Reg. No. 3,479,607

**United States Patent and Trademark Office** Registered Aug. 5, 2008

## TRADEMARK
### PRINCIPAL REGISTER



RED BULL GMBH (AUSTRIA LTD LIAB CO)
AM BRUNNEN 1
FUSCHL AM SEE, AUSTRIA 5330

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY, SPORTS DRINKS, ENERGY DRINKS AND SOFT DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 1-31-1987; IN COMMERCE 5-31-1996.

OWNER OF U.S. REG. NOS. 3,086,964, 3,233,533 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY DRINK", APART FROM THE MARK AS SHOWN.

THE COLOR(S) RED, BLUE, SILVER AND GOLD IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE WORDS "RED BULL ENERGY DRINK" AND DOUBLE BULLS LOGO ON A BLUE AND SILVER TRAPEZOIDAL GEOMETRIC BACKGROUND. THE COLOR BLUE APPEARS IN THE UPPER LEFT AND LOWER RIGHT QUADRILATERALS, AND ON THE BAR NEAR THE BOTTOM OF THE LOWER LEFT QUADRILATERAL, THE COLOR SILVER APPEARS IN THE UPPER RIGHT AND LOWER LEFT QUADRILATERALS AND ON THE BAR NEAR THE BOTTOM OF THE LOWER RIGHT QUADRILATERAL, THE COLOR RED APPEARS ON THE LETTERING OF "RED BULL ENERGY DRINK" AND ON THE BULL DESIGNS, AND THE COLOR GOLD APPEARS ON THE SUN DESIGN IN THE CENTER OF THE MARK.

SER. NO. 77-316,470, FILED 10-29-2007.

HEATHER SAPP, EXAMINING ATTORNEY

# EXHIBIT
# C



LIBRARY OF CONGRESS   1

## Copyright Office
## of the United States

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that on May 14, 2004, a claim for copyright of a work identified as **RED BULL ENERGY DRINK - FRONT LABEL DESIGN** was registered under number **VA 1-410-959.** This work was registered in accordance with provisions of the United States Copyright Law. (Title 17 United States Code)

**THIS IS TO CERTIFY ALSO**, that the attached is an additional certificate for this work.

**IN WITNESS WHEREOF**, the seal of this office is affixed hereto on March 30, 2009.

Marybeth Peters
Register of Copyrights

Rosemary J. Kelly
Head
Records Research and
Certification Section
Information and Reference
Division

p. 1 of 2

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

2

**Form GATT**
For a Restored Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**VA 1-410-959**

TX                    HR          SRU

EFFECTIVE DATE OF REGISTRATION

May 14 2004
Month    Day    Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE FORM GATT/CON.

**1**  **a**  TITLE:
Red Bull Energy Drink - Front Label Design

English translation:

**b**  DESCRIPTION OF THE WORK: (Check one or more)
- ☐ literary work
- ☐ musical work, including any accompanying words
- ☐ dramatic work, including any accompanying music
- ☐ pantomime or choreographic work
- ☒ pictorial, graphic, or sculptural work
- ☐ motion picture or other audiovisual work
- ☐ architectural work
- ☐ sound recording, created in _____ (year)

**2**  **a**  AUTHOR(S):
Name:  Dietrich Mateschitz

Citizenship (when work was created):  Austria
Domicile (when work was created):  Austria
Date of death:  N/A

**b**  Name:

Citizenship (when work was created):
Domicile (when work was created):
Date of death:

**3**  YEAR AND NATION OF PUBLICATION: (If work was published, give the year and nation in which it was first published.)
Year:  1987

Nation:  Austria

**4**  **a**  OWNER(S) OF U.S. COPYRIGHT:
Name:  Dietrich Mateschitz

Address:
Nonnberggasse 20
5020 Salzburg
Austria

**b**  Means by which copyright ownership was transferred
(if owner is not the author):

APPLICATION RECEIVED
MAY 14 2004

DEPOSIT RECEIVED
MAY 14 2004   (D)

FUNDS RECEIVED

p. 1 of 2

2

3

*Amended by C.O.  Authority e-mail from
Raymond Kurz of Hogan & Hartson LLP, authorized
agent of Dietrich Mateschitz, rec'd 8/8/07.

| EXAMINED BY | | FORM GATT |
|---|---|---|
| CHECKED BY | | |
| CORRESPONDENCE ☑ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE FORM GATT/CON.**

**LIMITATION OF COPYRIGHT** If the registration does not extend to the entire work, describe the material that is covered by the registration.
(see instructions)

★ ~~Blue and silver artwork, text appearing on the top and bottom of the blue and silver artwork, and compilation (arrangement, coordination and arrangement of the blue and silver artwork, text appearing on all of the blue and silver artwork, and the double bull and sun design.~~

★ Arrangement of elements in a 2-dimensional artwork.

**5**

**PREVIOUS REGISTRATION:** If this work was ever registered in the U.S. Copyright Office, give the registration number and year if known:

N/A

**6**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a deposit account established in the Copyright Office, give the name and number of that account. Do not give credit card information on this form.
Name ▼                                                    Account Number ▼

N/A

**7**

**CORRESPONDENCE** Give the name and address to which correspondence about this application should be sent.   ☐ Same as space 4a.
                                                                                                              ☑ Same as space 9.

Area or country code and telephone number ▶ 202-637-6433          Email ▶ slmcgee@hhlaw.com          Fax number ▶ 202-637-5910

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the: (Check one )
   ☑ Author
   ☐ Owner of U. S. copyright
   ☐ Agent of _____
                              (Name of author or owner of U.S. copyright)
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name:  Dietrich Mateschitz                    Date:  11 May 2004

Handwritten signature (X) ▼

**8**

| Certificate will be mailed in a window envelope to this address: | Name ▼ Shelly L. McGee, Hogan & Hartson L.L.P. | **9** |
|---|---|---|
| | Number/Street/Apt ▼ 555 Thirteenth Street, NW | |
| | City/State/ZIP/Nation ▼ Washington, D.C. 20004 | |

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev. August 2003—60,000   Web Rev. August 2003   ⓦ Printed on recycled paper                    U.S. Government Printing Office: 2003-488-626/60,039



4



4

# EXHIBIT
# D

